UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RENE GIBSON, SR.                                      CIVIL ACTION

VERSUS                                               NO. 11-2929

SHERIFF MARLIN GUSMAN ET AL.                         SECTION "J" (2)

## ORDER AND REASONS ON MOTION TO AMEND; REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff, Rene Gibson, Sr., was a prisoner in the Orleans Parish Prison system ("OPP").[1] He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman, Warden C. Louque, Warden C. Golini, Deputy Tapp and Lt. Taylor, all of whom are or were employed at OPP. Gibson alleges that while incarcerated in OPP, he was subjected to unsanitary conditions and excessive force and received constitutionally inadequate medical care. He seeks monetary damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On January 19, 2012, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

---

[1]Plaintiff advised the court on January 30, 2012, that he had been released from prison and provided his current address. Record Doc. No. 30.

Before the telephone conference, Gibson filed motions to amend and for a temporary restraining order. Defendants subsequently filed memoranda in opposition. Record Doc. Nos. 13, 14, 28 and 29. Plaintiff seeks to amend his complaint to expand upon his medical care claim, to add OPP Dr. Higgins as a defendant on his medical care claim and to add a jury demand. In his motion for a temporary restraining order, Record Doc. No. 14, plaintiff states that he "has continued to suffer threats, although 'verbally,' of physical assault & abuse . . ." and seeks transfer to the Jefferson Parish Correctional Center to "assure his complete safety." Plaintiff's testimony during the <u>Spears</u> hearing has been considered in connection with this report, which also contains a determination of plaintiff's motion to amend and a recommendation for disposition of the pending motion for injunctive relief pursuant to 28 U.S.C. § 636(b)(1)(B).

After the conference, defense counsel provided to the court a copy of plaintiff's inmate grievance forms. Record Doc. No. 33. In response to defense counsel's submission, plaintiff filed a "Notice to Court and Defendant Lawyer," Record Doc. No. 31, stating that "the grievance forms Defendant turn[ed] into the Court is (sic) only half of the grievance forms that plaintiff . . . complaint (sic) about when he was incarcerated." <u>Id.</u> at p. 1.

## THE RECORD

Gibson testified that he was incarcerated on an alleged probation violation. He said he had previously been sentenced to three years probation based upon a December 2010 theft conviction. He testified that his probation had not yet been revoked as he awaits trial on a separate charge of simple criminal damage in Jefferson Parish, and his probation revocation proceedings were on hold pending resolution of the new criminal charge.

Gibson confirmed that he asserts several claims in this case. His first claim is that on October 18, 2011, he was beaten by defendant Deputy Tapp who was assisted by a second deputy whose name he does not know. Gibson testified that on that date, "I was rolling in from intake, and I was being kind of belligerent about my medication that they had taken from me . . . I was cursing, not obeying their orders. They were telling me to stand against the wall, and I was trying to get my point across, and they told me a few times to 'be quiet, get back in line,' and I was trying to let them know I needed my medication that they took from me in intake . . . my medicine for my mental illness." Plaintiff said he was "pacing back and forth" in leg irons. "I was out of line. They kept telling me to get back in line," but Gibson persisted in telling the officers that he needed to get back in line. He said, "I complied, probably about the third time" that he was told to get back in line.

Gibson acknowledged, however, that "I got back out of line again," and that he "stepped back towards the deputy. . . . Before I know it, I looked up and my glasses went one way and my head went another way." He testified that he had been told to keep his back against the wall in the corridor where he was located, but "I just kept stepping over the line." He also acknowledged that he had his "roll-in kit" in one hand, and some documents in the other, his legs were shackled, but "my arms were free." He said Deputy Tapp punched him, grabbed him and walked him down the hall, kicking and punching him along the way, which he said lasted about two to three minutes. Gibson said another deputy was also involved in grabbing him and helping Tapp drag him down the hall, but he did not know the other deputy's name. Gibson thought the other deputy did <u>not</u> strike him, but only helped Deputy Tapp take him down the hall.

As to Tapp's use of force, Gibson testified that Tapp was "kicking me with the steel toes, punching me, choking me," which went on for two or three minutes. Asked what injuries he suffered, Gibson testified, "I have a blood clot in the front of my head, I got a knot in the back of my head, and I never received no medical attention, until I seen Nurse Van Buren." He described the blood clot as being the size of a golf ball with blood visible under the skin. He said the clot "went down . . . over time" and that at the time of his testimony it had shrunken to the size of a dime. He said the knot at the back of his head was still visible and that it was "the size of a quarter or bigger." He said his

vision is blurry, that he has been verbally threatened since the beating and that his safety is in jeopardy, although he has not been beaten again.

Gibson confirmed that his second claim in this case is that he did not receive proper medical care either for the injuries he suffered in the beating or for his psychiatric problems. He stated that he is a schizophrenic who also suffers from depression and that he was "raising hell" when he was brought into OPP from the Jefferson Parish jail, because the psychiatric medications he had received in Jefferson Parish were taken away when he was booked into OPP. Gibson testified that he seeks to add Dr. Higgins as a defendant in this case because Dr. Higgins has refused to prescribe the medication to him now, even though Dr. Higgins had previously prescribed the same medication to Gibson during an earlier stint of jail time in OPP in 2010. Gibson testified that Dr. Higgins had told him "he couldn't take Jefferson Parish's word that . . . that's the right medication for me; that's why he would not prescribe medication for me, [even though] he gave me the same medication between October and December 2010."

Gibson confirmed the accuracy of the notation in his OPP medical records, Record Doc. No. 27, that Dr. Higgins had seen him twice during the subject incarceration in OPP, including once on November 30, 2011, and again about a month or six weeks later, "and he told me that he was waiting on my medical records from Ochsner psychiatric department to dispense my medications because he wasn't sure of the dose that I was

on." He alleged that all Dr. Higgins had to do was review his old OPP medical records from 2010 to determine the dosage.

Gibson also complained that he did not receive adequate medical care for the injuries suffered in the beating. He said the first time he was seen for these injuries at OPP was about five weeks after the incident, when Nurse Van Buren saw him, referred him to a doctor, and gave him ibuprofen. He later saw Nurse Practitioner Pounds at OPP on December 9, 2011, and she "looked at me from across the desk," but failed actually to examine him. He alleged that, although the nurse practitioner gave him ten (10) days of ibuprofen doses, she did not examine him. Gibson testified that he had been seen by a doctor at OPP in the last week before the hearing, and that the doctor told him the blood clot needed to be lanced so that it could be drained. He stated that he continues to experience dizziness, blurry vision and headaches and that "ibuprofen ain't doing it for me."

Gibson testified that his third claim is that he had to use an unsanitary toilet on the basketball court at OPP on one occasion between October and November 2011. He stated that during that time he was taken out to the basketball court once a week every Monday for recreation and that he had to use this toilet once. He said the toilet "hasn't been working in seven or eight years. It's full of feces, running over with trash. It's unsanitary (with) flies flying all around." He complained that on the single occasion

when he had to use this toilet, Lt. Taylor would not let him leave the basketball court to use a different toilet, so he had to use the broken one.

As to his final claim, Gibson alleged that Sheriff Gusman is responsible for all of the conditions about which he complains because the sheriff is in charge of the entire OPP complex. Gibson acknowledged that the sheriff was <u>not</u> personally involved in any of the occurrences on which he bases his claims, but "he's employing all these people," <u>i.e.</u>, the named defendants.

Gibson reiterated that he fears for his safety. He stated that he had been moved within OPP several times, and that at the time of the hearing he was being housed in the OPP medical tier since December 9, 2011, on order of the judge presiding over his probation matter, because of his psychiatric conditions and the fact that he is still not receiving his medications for these conditions. Since this testimony, however, Gibson has advised the court that he has been released from prison.[2]

## <u>ANALYSIS</u>

## I.   <u>PRISONER PETITION SCREENING STANDARDS OF REVIEW</u>

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); <u>Lewis v. Estes</u>, 242 F.3d 375, 2000 WL

---

[2]Record Doc. No. 30.

1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more

comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because they lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his

claims. Even under the broadest reading,[3] plaintiff fails to state a cognizable cause of action under Section 1983 that his constitutional rights were violated.

(A)    Excessive Force Claim

According to his testimony, Gibson was incarcerated in OPP based upon an alleged probation violation. He testified that his probation had not yet been revoked as he awaits trial on a separate charge of simple criminal damage. Thus, his claim that Deputy Tapp used excessive force against him is properly characterized as asserting a violation of his substantive due process rights under the Fourteenth Amendment. Petta v. Rivera, 143 F.3d 895, 911 (5th Cir. 1998) ("[W]here a plaintiff's excessive force claim, whether he be a prisoner, arrestee, detainee, or an innocent bystander of tender years, falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment.") (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)); accord Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998).

Under the Fourteenth Amendment standard, the court must ask whether defendant's "actions caused [plaintiff] any injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that [they] amounted to an abuse of official power

---

[3]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

that shocks the conscience." Petta, 143 F.3d at 902 (citation omitted). The "'extent of injury is one factor' to be considered [along] with 'the need for application of force, the relationship between that need and the amount of force used' and other factors, . . . [but] the extent of injury is only one relevant factor and cannot be exclusively determinative under the . . . substantive due process approach." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

In the context of an inmate's allegations that a prison guard had violated the Eighth Amendment by using excessive force against the plaintiff, the United States Supreme Court "has held that 'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'" Wilkins v. Gaddy, 130 S. Ct. 1175, 1176 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 4 (1992)). The Supreme Court confirmed that the standards it had established in Hudson remain the law.

> The "core judicial inquiry," we held [in Hudson], was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7, 112 S. Ct. 995; see also Whitley v. Albers, 475 U.S. 312, 319-321, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. . . ." Hudson, 503 U.S. at 9 . . . .
> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. Id. at 7, 112 S. Ct. 995. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use

of force could plausibly have been thought necessary' in a particular situation." Ibid. (quoting Whitley, 475 U.S. at 321, 106 S. Ct. 1078). The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S. Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Ibid. (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Ibid. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Id. at 1178.

The Eighth Circuit Court of Appeals has stated that the Supreme Court in Wilkins "left open the possibility of dismissal where the injury conclusively shows that the force applied was not unconstitutional." Williams v. Jackson, 600 F.3d 1007, 1012 (10th Cir. 2010) (citing Wilkins, 130 S. Ct. at 1180) (emphasis added). Wilkins confirmed that Hudson remains the touchstone for evaluating claims under the Eighth Amendment. Thus, the Fifth Circuit's prior cases that relied on Hudson continue to provide binding legal standards for this court.

Gibson's written submissions and testimony fail to establish either a Fourteenth or an Eighth Amendment violation. The force he described resulted in very minor injuries and was in no way malicious, sadistic, shocking to the conscience, or grossly disproportionate to the need for action under the circumstances of Gibson's admittedly belligerent behavior.

13

Plaintiff's testimony establishes that his own actions in cursing at the officers, disobeying their repeated orders to get back in line, pacing back and forth in intake and finally stepping out of line again in a manner that could reasonably have been perceived as threatening, caused a need to apply force. The officer reasonably perceived plaintiff's behavior as a threat to prison control, discipline or security and his use of force was not an abuse of power. Gibson's testimony establishes that his conduct in intake was disruptive, abusive, disobedient to reasonable orders and threatening to prison order and security. His refusal to follow Deputy Tapp's orders posed a threat to jailhouse discipline requiring a response. His resulting injuries, as described both in Gibson's testimony and in his medical records, were minor.

Thus, his allegations in this case resemble the similar allegations of the prisoner/plaintiff in Baldwin v. Stalder, 137 F.3d 836 (5th Cir. 1998), in which the Fifth Circuit held that the inmate's Section 1983 excessive force claim should have been dismissed because the use of pepper mace was justified after the inmate ignored orders to stop disruptive behavior. Id. at 838-41. As in Baldwin, Gibson's testimony establishes an appropriate correlation between the need for force and the amount of force used. Further, plaintiff's testimony establishes that he suffered only minimal injury. His medical records describe his injuries as a "sebaceous cyst to left forehead without puncta," Record Doc. No. 27 (Provider Note/Orders of Nurse Practitioner Pounds

12/9/11), which <u>Stedman's Medical Dictionary</u> (27th ed. at pp. 1486, 1609) defines as an "oily or fatty" . . . "minute round spot." Thus, plaintiff's excessive force claim is legally frivolous and fails to state a claim upon which relief can be granted.

(B)     <u>Medical Care</u>

Gibson testified that he did not receive proper medical care either for the injuries he suffered in the incident with Deputy Tapp or for his psychiatric problems. He stated that he is a schizophrenic who also suffers from depression and that he was "raising hell" when he was brought into OPP from the Jefferson Parish jail because the psychiatric medications he had received in Jefferson Parish were taken away when he was booked into OPP.  Gibson was an alleged probation violator and pretrial detainee at all relevant times about which he complains.

Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>,  441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186

(5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d

449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650. The Fifth Circuit explained that for the <u>Bell</u> "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u>

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission and the deliberate indifference standard enunciated in

<u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), will apply.  <u>Shepherd v. Dallas County</u>, 591

F.3d 445, 452 (5th Cir. 2009) (citing <u>Bell</u>, 441 U.S. at 539; <u>Scott v. Moore</u>, 114 F.3d 51,

53 (5th Cir. 1997); <u>Hare</u>, 74 F.3d at 649); <u>Tamez v. Manthey</u>, 589 F.3d 764, 769-70 (5th

Cir. 2009) (citing <u>Scott</u>, 114 F.3d at 53; <u>Hare</u>, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991));

accord <u>Harris v. Hegmann</u>, 198 F.3d 153, 159 (5th Cir. 1999); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837; <u>accord</u> <u>Tamez</u>, 589 F.3d at 770 (citing <u>Thompson v. Upshur County</u>, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would <u>clearly evince a wanton disregard</u> for any serious medical needs.'" <u>Brewster v. Dretke</u>, 587 F.3d 764, 770 (5th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 3368 (2010) (quoting <u>Domino v. Tex, Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Gibson must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the conditions Gibson described resulting from his encounter with Deputy Tapp, a knot on his head and a small clot of blood under the skin, constituted a serious medical need that posed a substantial risk of harm in Gibson's particular circumstances. As Gibson conceded during his testimony, he did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious

medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).

As to his mental health condition, the medical records reveal no suicidal or other physically harmful ideation.  While some courts have characterized mental illnesses as a "serious medical need" for purposes of constitutional analysis in Section 1983 claims by detainees, they have generally done so in circumstances in which the plaintiff also exhibited seriously harmful or severe symptoms or other ailments in combination with a mental illness sufficient to render plaintiff's overall condition serious.  See Lemaire v. Maass, 745 F. Supp. 623, 636 n.8 (D. Ore. 1990), vacated on other grounds, 12 F.3d 1444 (9th Cir. 1993) (depression in combination with epilepsy, hypertension and vertigo presented serious medical need requiring immediate attention); Gibson v. County of Washoe, 290 F.3d 1175, 1194 (9th Cir. 2002) (manic depressive condition exhibited by wild, physically combative behavior leading to heart attack presented serious medical condition by detainee); Mahan v. Plymouth County House of Corrections, 64 F.3d 14,

16, 18 (1st Cir. 1995) (depression including severe anxiety attacks and other "serious symptoms . . . actually experienced while detained" presumed by the court to constitute serious medical need). The symptoms described by Gibson and the medical records do not reflect that he had a serious mental health need during his stay in OPP commensurate with these cases.

Even assuming, however, without concluding that plaintiff's conditions presented serious medical need for constitutional purposes, Gibson has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OPP.

Gibson testified and his medical records confirm that, after about seven (7) weeks of delay, he was seen by a nurse practitioner at the jail for the minor injuries he suffered in the incident with Deputy Tapp. The nurse practitioner gave him ibuprofen and opined that "in my opinion patient can go to general population. No physical restrictions noted on exam." Record Doc. No. 27 (Provider Note/Orders 12/9/11). As to his mental conditions, Gibson's testimony established that Dr. Higgins twice exercised his medical judgment to defer the provision of psychotropic medication until he could be certain based upon evaluation of Gibson's history of the appropriate type and dosage of

medication that might be appropriate. Although Gibson experienced some delay in his treatment, his conditions were monitored and addressed by medical personnel during his short stay in OPP.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Greer v. Tran, 124 F. App'x 261, 262 (5th Cir. 2005) (no deliberate indifference to serious medical needs when inmate was tested for diabetes mellitus, which was ruled out, although he ultimately died after falling into a diabetic ketoacidotic coma); Harris v. Donaldson, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995) (no deliberate indifference where prisoner received medical treatment for diabetes, including blood monitoring, medication and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for his chronic condition).

Although Gibson has alleged delay in receiving medical care in that he did not receive the treatment he thought was necessary quickly enough, and he has expressed dissatisfaction with the overall speed, quality and initial effectiveness of treatment, none

of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for <u>medical judgment</u>. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added). No such showing has been made on the current record. In Gibson's case, the decisions of both the nurse-practitioner and Dr. Higgins were classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation. <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006); <u>Mendoza</u>, 989 F.2d at 195; <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. <u>Wilson</u>, 501 U.S. at 298. No such showing can be made in this case in light of the continuing and ultimately successful medical attention Gibson has received for his hypertension during his incarceration.

Contentions like Gibson's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference); Williams v. Browning, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs. For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

(C)     Unsanitary Conditions

Plaintiff's testimony concerning the conditions about which he complains was that he had to use an unsanitary toilet on the basketball court at OPP on a single occasion between October and November 2011. He complained that on the single occasion when he was forced to use this toilet, Lt. Taylor would not let him leave the basketball court to use a different toilet, so he had to use the broken one.

Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999). In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's

liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Gibson's allegations do not constitute violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a

substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise

to the level of a constitutional violation, the conditions must be "'so serious as to deprive

[plaintiff] of the minimal measure of life's necessities,' in this case the basic human need

for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003)

(quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent

to inmate health or safety.  Farmer, 511 U.S. at 847.  A prison official cannot be held

liable "unless the official knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." Id.

at 837 (emphasis added).

Gibson's written allegations and testimony meet neither of these two requirements.

The one-time condition described by plaintiff, while plainly not comfortable or pleasant,

does not rise to a level of seriousness constituting a constitutional violation. Gibson

alleges no serious harm or risk of serious harm in the constitutional sense, and the court

can perceive none under the circumstances described in plaintiff's testimony and written

submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount

to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir.

1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Gibson's allegations about his one-time use of a dirty toilet at OPP fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215; Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez, 522 F.3d at 560.

For all of the foregoing reasons, Gibson's complaint about this condition of his confinement falls short of stating a constitutional violation, and this claim must also be dismissed.

(D)     Sheriff's Liability

Gibson makes no claim that defendant Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006). Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v.

Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115. "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)). In the instant action, plaintiff has failed to establish either that this defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of this defendant and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which

the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, Gibson must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, Gibson must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Payne v. Pickett, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Under these standards, neither Gibson's testimony nor his written submissions in this case are adequate to state a cognizable constitutional claim against Sheriff Gusman.

## II.    MOTION FOR TEMPORARY RESTRAINING ORDER

According to Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a temporary restraining order and/or preliminary injunction must set forth "specific facts in an affidavit or a verified complaint" that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; . . ." A temporary restraining order and preliminary injunction are extraordinary equitable remedies that may be granted only if plaintiff establishes four essential elements:  (1) a substantial likelihood of success on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause defendants; <u>and</u> (4) the injunction will not disserve the public interest. <u>Sugar Busters LLC v. Brennan</u>, 177 F.3d 258, 264 (5th Cir. 1999).  The requisite showing is "a <u>substantial</u> threat of <u>irreparable</u> injury if the injunction is not issued." <u>DSC Commc'ns Corp. v. OGI Techs., Inc.</u>, 81 F.3d 597, 600 (5th Cir. 1996) (emphasis added).

For two reasons, Gibson's motion for a temporary restraining order should be denied.  First, plaintiff has already been released from OPP and is no longer incarcerated.  Thus, transfer is no longer necessary or possible, and the matter is moot.  Second, for the reasons discussed elsewhere in this report and recommendation, plaintiff has no

likelihood of success on the merits and no other factor relevant to temporary restraining order analysis weighs in his favor.

For all of these reasons, plaintiff's motion for injunctive relief should be DENIED.

III.    ORDER AND REASONS ON MOTION TO AMEND

Gibson seeks to amend his complaint for two purposes: (1) to add a jury demand, and (2) to add Dr. Higgins as a defendant.

The policy of the Federal Rules of Civil Procedure is liberal in favor of permitting amendment of pleadings, and Rule 15(a) evinces a bias in favor of granting leave to amend. Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial. Stripling v. Jordan Prod. Co., 234 F.3d 863, 872 (5th Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994); Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co., 195 F.3d 765, 770 (5th Cir. 1999); Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597-98 (5th Cir. 1981)). Thus, "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but such leave "is by no means automatic." Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted). Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." Id.

Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted. . . . [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." Stripling, 234 F.3d at 873 (quotations and citations omitted); accord Fenghui Fan v. Brewer, 377 F. App'x 366, 367 (5th Cir. 2010). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' 'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" In Re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)) (footnote omitted).

Gibson's motion to amend to add Dr. Higgins as a defendant on his medical care claim is DENIED. For all of the reasons discussed above, Gibson cannot state a cognizable Section 1983 claim concerning his medical care in this case. Thus, his request to add Dr. Higgins as a defendant on that claim is futile and must be denied on that ground.

On the other hand, his request to amend his complaint to add a jury demand should be granted. Fed. R. Civ. P. 38(b)(1) provides that a demand for trial by jury must be

asserted not later than fourteen (14) days after service of the last pleading directed to any issue triable of right by a jury, and that failure to do so constitutes a waiver by the party of trial by jury, Fed. R. Civ. P. 38(d).  However, "a court should grant a jury trial in the absence of strong and compelling reasons to the contrary."  Swofford v. B & W, Inc., 336 F.2d 406, 409 (5th Cir. 1964)).  This is so because the Seventh Amendment confers a fundamental right.  The Fifth Circuit has stated:  "[W]e must be mindful that maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."  McDonald v. J. Steward, 132 F.3d 225, 229 (5th Cir. 1998) (quotations omitted).

The last pleading directed to any issue triable of right by a jury is the answer of all defendants.  Record Doc. No. 11.  Since plaintiff requested a jury trial within fourteen (14) days of defendants' answer, his request was timely.  Accordingly, plaintiff's motion to amend is granted in part to add a jury demand.  The Clerk of Court is directed to note plaintiff's jury demand on the docket of this case, so that – if my recommendation to dismiss the case is not accepted – plaintiff will be entitled to a jury trial on any remaining claims.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for temporary restraining order and/or other preliminary injunctive relief be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this ____11th____ day of April, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.